UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Plaintiff(s),<br><br>v.<br><br>STEVEN A. HOLPER, M.D.,<br><br>Defendant(s). | Case No. 2:18-CV-1338 JCM (BNW)<br><br>ORDER |

Presently before the court is plaintiff National Fire & Marine Insurance Company's ("National Fire") first motion to dismiss (ECF No. 28) defendant Steven Holper's counterclaims (ECF No. 23). Holper filed a response. (ECF No. 38). National Fire did not file a reply, and the time for doing so has passed.

Also before the court is National Fire's first motion for summary judgment (ECF No. 29) on Holper's counterclaims (ECF No. 23). Holper filed a response. (ECF No. 38). National Fire did not file a reply, and the time for doing so has passed.

Also before the court is National Fire's second motion to dismiss (ECF No. 42) Holper's counterclaims (ECF No. 41). Holper filed a response (ECF No. 47), to which National Fire replied (ECF No. 65).

Also before the court is National Fire's second motion for summary judgment (ECF No. 43) on Holper's counterclaims (ECF No. 41). Holper filed a response (ECF No. 47), to which National Fire replied (ECF No. 65).

Also before the court is National Fire's motion for summary judgment on all of its claims. (ECF No. 44). Defendant/intervenor Scott Hampton and Holper both filed responses (ECF Nos. 48, 55), to which National Fire replied (ECF No. 65).

**I.     Background**

This case involves a dispute over the rights and obligations owed by National Fire to Holper under a professional liability insurance policy. (ECF No. 41). The following facts have been alleged by the parties:

*1. Holper's insurance policy*

Holper purchased a professional liability insurance policy underwritten by National Fire, effective from July 25, 2017, to July 25, 2018 (the "policy"). *Id*. The policy provided that National Fire would pay, on Holper's behalf, for all loss arising from a covered healthcare event, and would defend Holper if claims for potentially covered losses were filed against him. (ECF No. 45). This dispute arises from National Fire's contention that it has no duty to defend or indemnify Holper with regard to claims filed against him in a separate wrongful death lawsuit brought by the estate of Diana Hampton. (ECF Nos. 35, 41).

*2. Related criminal prosecution and wrongful death suit*

On February 7, 2018, Holper was indicted on several felony charges including unlawful distribution of a controlled substance. (ECF No. 41); *United States v. Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 1 ("related criminal action"). Count two of the indictment, to which Holper pleaded guilty, was for unlawful distribution of a controlled substance to "Patient A," who was a former Henderson municipal judge named Diana Hampton. (ECF No. 41); *Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 1. On March 13, 2016, Hampton was found dead in her home following an overdose of the opioid fentanyl. (ECF No. 45 ex. 2).

On December 12, 2018, Holper pleaded guilty to count two of the indictment by way of a plea agreement, which states in relevant part that Holper intentionally distributed fentanyl "outside the usual course of his professional practice and without a legitimate medical purpose." *Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 50.

James C. Mahan
U.S. District Judge

- 2 -

Following Hampton's death, the estate of Hampton ("estate") brought a wrongful death suit against Holper on February 27, 2018. (*See* ECF Nos. 44, 55) ("wrongful death action").[1]

*3. National Fire's defense and indemnity obligations*

On or about March 6, 2018, Holper provided notice of the wrongful death action to National Fire, who is presently providing a defense to Holper under a reservation of rights dated April 26, 2018. (ECF Nos. 44, 45 ex. 4, 55). National Fire has been paying for Holper's attorney's fees and other costs of his defense in the wrongful death action. (ECF No. 44, 55).

National Fire and Holper scheduled an examination under oath ("EUO") for June 14, 2018, which was ultimately rescheduled to July 6, 2018. (ECF Nos. 44, 55). On June 11, 2018, Holper requested that the EUO be continued until after resolution of the related criminal action, which National Fire denied. (ECF No. 44). Holper ultimately failed to attend the EUO meeting. (ECF No. 55).

*4. Procedural history*

On July 20, 2018, National Fire filed its original complaint in this action. (ECF No. 1). On January 16, 2019, National Fire filed its first amended complaint (ECF No. 21), and on March 14, 2019, it filed its second amended complaint, alleging breach of contract and seeking declaratory relief (ECF No. 35).

On March 28, 2019, Holper filed three counterclaims against National Fire. (ECF No. 41). The counterclaims allege the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) four separate violations of NRS 686A.310. *Id*.

Now, National Fire moves for summary judgment on both its claims and Holper's counterclaims. (ECF Nos. 43, 44)

. . .

. . .

. . .

---

[1] The estate's most recent pleading, its third amended complaint, was filed on December 13, 2018. (ECF No. 45, ex. 2).

## II. Legal Standard

### 1. Summary judgment standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. Where the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

2. *Declaratory relief*

A party may seek declaratory relief as to the rights and obligations arising under a contract pursuant to NRS 30.040(1), which provides that:

> Any person interested under a deed, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Nev. Rev. Stat. § 30.040(1). Under Nevada law, a court may grant declaratory relief only if: (1) a justiciable controversy exists between persons with adverse interests, (2) the party seeking declaratory relief has a legally protectable interest in the controversy, and (3) the issue is ripe for judicial determination." *Cty. of Clark, ex rel. Univ. Med. Ctr. v. Upchurch*, 961 P.2d 754, 756 (Nev. 1998).

. . .

**III. Discussion**

As a preliminary matter, Holper disputes the admissibility of all facts set forth in his plea agreement in the related criminal action. (ECF No. 55); *Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 50. Holper contends that although he has waived all rights under Federal Rule of Evidence 410, the court has not yet ruled on the admissibility of these facts in the present action. (ECF No. 55).

Only admissible evidence may be considered on a motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Orr v. Bank of America NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

The facts at issue are set forth in section IV of Holper's plea agreement. *Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 50. In section V, Holper agreed that the facts in section IV would be "admissible at any proceeding" if he did not plead guilty or withdrew his guilty plea. *Id*. Holper also waived "all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of his plea agreement." *Id*. Even if Rule 410 did serve to bar admission of the plea agreement (which is doubtful, given that the guilty plea does not fall within any of the enumerated exclusions), Holper has waived this challenge. *Id*. Moreover, the court has already taken judicial notice of the plea agreement pursuant to Federal Rule of Evidence 201(b)(2). (ECF No. 72).

Accordingly, the court finds that the plea agreement is admissible in this action and will consider its content in assessing the instant motions.

*1. National Fire's motion for summary judgment on its claims*

National Fire alleges that Holper breached the policy by failing to attend his EUO and provide requested documents, and by violating several enumerated policy exclusions. (ECF No. 44). National Fire requests that summary judgment be entered on all of its claims, and that the court declare that Holper is in breach of the policy, such that National Fire has no duty to defend or indemnify him in the wrongful death action. *Id*.

*a. Breach of contract*

National Fire argues that Holper violated policy exclusion four and is thus in material breach of the insurance contract. *Id*. The policy provides, in relevant part:

I. EXCLUSIONS

   This policy does not apply to:

   A. Any loss arising from, or in connection with, any act listed in the subparagraphs below, and any **event**, **health care event**, or **managed care event** when intertwined with, or inseparable from, any such act:

   …

   4. any willful violation of any law, statute, or regulation;

(ECF No. 45 ex. 1). National Fire contends that in light of Holper's conviction in the related criminal action, where he pleaded guilty to intentionally distributing fentanyl "outside the usual course of his professional practice and without a legitimate medical purpose," a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), the fourth exclusion applies to preclude coverage. (ECF No. 44); *Holper*, case no. 2:18-cr-00037-JAD-NJK, ECF No. 50.

When a contract is clear and unambiguous, contract construction is a question of law and "suitable for determination by summary judgment." *Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990); *see also Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013). Nevada's longstanding policy is to interpret and enforce contracts based on the written language, reading words with their usual and ordinary meaning. *Ellison*, 993 P.2d at 1263; *Traffic Control Servs., Inc. v. United Rentals Nw., Inc.*, 87 P.3d 1054, 1059 (Nev. 2004).

Alternatively, summary judgment is not appropriate when a contract is ambiguous, as the court must rely on extrinsic evidence to resolve ambiguous terms. *Dickenson v. Satte, Dep't of Wildlife*, 877 P.3d 1059, 1061 (Nev. 1994). A contract is ambiguous if it may be reasonably interpreted in more than one way. *Galardi*, 301 P.3d at 366. Ambiguity does not arise simply because the parties disagree on how to interpret the contract. *Id*.

"An insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. V. Neal*, 64 P.3d 472, 473 (Nev. 2003). An insurance policy is interpreted "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (quoting *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993)). Where a provision in an insurance contract is unambiguous, "a court

will interpret and enforce it according to the plain and ordinary meaning of its terms." *Powell v Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011).

Clauses providing coverage are "interpreted broadly so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984). For an insurer to exclude coverage under an exclusion in its policy, it must "(1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell*, 252 P.3d at 674.

Here, the fourth policy exclusion states that the policy does not apply to "any willful violation of any law, statute, or regulation." (ECF No. 45 ex. 1). This exclusion is in obvious and unambiguous language that plainly states the policy does not apply to willful, unlawful conduct. This interpretation appears to be the only fair interpretation of exclusion four, and neither Holper nor the estate have argued to the contrary. Further, Holper has admitted in his related criminal action plea agreement that he violated the law by intentionally distributing a controlled substance, which plainly demonstrates that the exclusion applies to this particular case.

Based on the foregoing, the court finds that the fourth policy exclusion (1) is obvious and unambiguous, (2) is susceptible to only one reasonable interpretation, and (3) plainly applies to exclude coverage in the wrongful death action. Because the fourth exclusion is alone sufficient to determine whether the policy applies to the wrongful death action, the court declines to address whether other exclusions contained in the policy would also preclude coverage. Further, the court declines to address whether Holper's alleged failure to attend his EUO and provide requested documents would preclude coverage.

  *b. Equitable estoppel*

For the reasons discussed in section III.a above, the fourth policy exclusion, by its own terms, would serve to preclude coverage based on Holper's related criminal action conviction. Apparently in anticipation of this conclusion, Holper contends that National Fire's conduct in

James C. Mahan
U.S. District Judge

- 8 -

investigating whether it had to provide coverage was contrary to its fiduciary obligations to Holper, such that it should be equitably estopped from denying coverage regardless of the policy's terms and exclusions. (ECF No. 55).

Holper alleges that National Fire conducted a "covert coverage investigation." *Id.* Holper argues that his March 20, 2018, phone interview with a National Fire investigator was conducted for the purpose of investigating potential coverage issues, and that Holper was not made aware of the investigation until he received National Fire's reservation of rights letter on April 26, 2018. *Id.*; (ECF No. 55-1).

The doctrine of equitable estoppel "functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 611 (Nev. 1992). The Supreme Court of Nevada has established a four-part test to determine whether equitable estoppel applies:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

*In re Harrison Living Trust*, 112 P.3d 1058, 1062 (2005) (internal quotation marks omitted).

Holper has failed to demonstrate that National Fire's investigation conduct warrants invoking the doctrine of equitable estoppel. Holper has made no showing as to why his March 20, 2018, interview with a National Fire investigator required him to disclose any information that he was not already obligated to provide under the policy. (*See* ECF No. 55-1). Holper has also failed to present evidence as to why the reservation of rights letter he received on April 26, 2018, was insufficient notice of a potential coverage problem. *Id.* Further, Holper has made no showing that he relied on any of National Fire's representations to his detriment.

Accordingly, the court will decline to estop National Fire from denying coverage under the policy's fourth exclusion.

    *c. Estate's response*

The estate contends that National Fire has a duty to defend and indemnify Holper because the wrongful death action stems from a doctor-patient relationship. (ECF No. 48). The estate also
James C. Mahan
U.S. District Judge

- 9 -

argues that National Fire's motion for summary judgment on its claims is not yet ripe because, pursuant to Federal Rule of Civil Procedure 56(d), the estate has not yet had adequate time to develop facts essential to oppose summary judgment. *Id*.

The estate has not demonstrated why the fact that Holper and Hampton were in a doctor-patient relationship is of relevance to the present action. As is discussed above, the fourth policy exclusion precludes coverage for the wrongful death action based on Holper's conviction for intentional and unlawful conduct. Because the policy explicitly excludes from coverage such conduct, the authority the estate cites in support of the possibility of coverage is inapposite and does not persuade the court that the existence of a doctor-patient relationship has any bearing on the policy's coverage here.

With regard to Rule 56(d), "a trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims." *Family Home and Fin. Ctr., Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The party requesting Rule 56(d) relief must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Id*. (citing *Cal. on behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Failure to satisfy each of these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id*. (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986))

In the affidavit attached to the estate's response, the estate indicates that it needs to conduct additional discovery with regard to the doctor-patient relationship and the but-for cause of Hampton's death in order to effectively oppose National Fire's motion for summary judgment. (ECF No. 48). Because the estate has not shown how this information would be relevant to determining National Fire's coverage obligations under the policy, the estate has failed to show that the sought-after facts are essential to its opposition.

Accordingly, the estate has not satisfied the requirements of Rule 56(d). The court will therefore deny the estate's request to defer ruling on summary judgment.

James C. Mahan
U.S. District Judge

- 10 -

*d. Conclusion*

In light of the foregoing, the court will grant National Fire's motion for summary judgment on its own claims (ECF No. 44) and order declaratory relief in National Fire's favor. In doing so, the court makes the following findings: (1) Holper is in breach of exclusion four of the policy due to his willful violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) based upon the policy's fourth exclusion and the facts admitted in Holper's plea agreement in the related criminal action, no coverage exists for Holper regarding the incidents that are the subject of the estate's third amended complaint; (3) National Fire has no duty to defend Holper against the estate's claims arising from the incidents that are described in the estate's third amended complaint; and (4) National Fire has no duty to indemnify Holper against the estate for any loss or damages arising from the incidents that are the subject of the estate's third amended complaint.

2. *Holper's counterclaims*

In Holper's answer to the second amended complaint, he asserts three counterclaims against National Fire: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) violation of the Unfair Claims Settlement Practices Act, NRS 686A.310 *et seq.* ("UCSPA").[2] The court will address each in turn.

*a. Breach of contract*

Holper argues that summary judgment should not be granted on his breach of contract counterclaim because National Fire did not notify him of its coverage denial investigation prior to his interview with a National Fire investigator. (ECF No. 55).

To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of*

---

[2] In his response, Holper submits that each of his counterclaims are not presently "ripe for summary decision." Based on the arguments set forth in the response, the court assumes that Holper does not intend to challenge the traditional ripeness doctrine standards of fitness for decision and hardship on the parties. *See San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). Rather, it appears Holper intends to challenge whether his counterclaims are the subject of a genuine dispute of material fact, and the court will address the response as such.

*Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

For much the same reasons as are set forth in section III.1.b above, Holper has failed to establish how National Fire's investigation breached the policy. Moreover, because National Fire has continued to pay Holper's attorney's fees and costs in the wrongful death action (*see* ECF Nos. 44, 55), it is unclear how Holper has sustained damages.

Because Holper has not demonstrated a genuine dispute of material fact as to breach of the policy or damages resulting therefrom, the court will grant National Fire's motion for summary judgment on this counterclaim.

### b. *Breach of covenant of good faith and fair dealing*

Holper alleges that National Fire failed to deal fairly and in good faith by bringing the instant action, by beginning its insurance coverage investigation before informing Holper that it was doing so, by demanding Holper attend an EUO while the related criminal action was pending, and by refusing to stay the instant action while the related criminal action was pending. (ECF Nos. 41, 55). Based on these allegations, Holper contends that this counterclaim is not appropriate for summary judgment.

In Nevada, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (1989). This implied covenant requires that parties "act in a manner that is faithful to the purpose of the contract and the justified expectations of the other party." *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994) (internal quotation marks omitted). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract … damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). A breach of the duty of good faith and fair dealing can occur "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract." *Id*. at 922–23.

To prevail on a breach of the covenant of good faith and fair dealing theory, a plaintiff must establish each of the following: (1) plaintiff and defendant were parties to a contract; (2)

defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995).

Holper has failed to show a genuine dispute of material fact as to this counterclaim. None of these allegations are sufficient to establish that National Fire acted in a manner unfaithful to the purpose of the contract because, under the policy, National Fire had a right to investigate coverage, request documents, and request an EUO from Holper. (*See* ECF No. 45). Similarly, none of these allegation indicate that Holper's justified expectations—that he be provided a defense and indemnified should he be sued for malpractice—were denied because National Fire has continued to provide a defense to him in the wrongful death action. (ECF No. 44, 55).

Further, Holper's argument that the mere filing of this action constitutes a breach of the covenant of good faith and fair dealing is without merit. The purpose of a declaratory judgment action is to avoid the Damoclean threat that arises where an adversary has not yet brought suit, thus exposing the other party to the specter of impending litigation. Here, National Fire has brought this declaratory relief action for precisely this reason: to avoid breaching the policy and prevent future litigation.

Accordingly, the court will grant National Fire's motion for summary judgment on this counterclaim.

    *c. Violation of UCSPA, NRS 686A.310 et seq.*

In his third counterclaim, Holper asserts that National Fire violated four sections of the UCSPA: NRS 686A.310(1)(a), (c), (d), and (f). Holper argues that summary judgment should not be granted on his UCSPA counterclaim because: (1) National Fire failed to provide a reservation of rights letter to Holper before it began investigating coverage denial; (2) National Fire demanded an EUO while the related criminal action was still pending; and (3) National Fire brought this action despite being estopped from denying coverage. (ECF No. 55).

Subsection (1) of NRS 686A.310 sets forth various activities considered to be an unfair practice. Nev. Rev. Stat. § 686A.310(1). Of relevance here, insurers violate the UCSPA by:

    (a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

….

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

….

(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

Nev. Rev. Stat. § 686A.310(1)(a), (c), (d), (f). Subsection (2) of NRS 686A.310 provides that "an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." Nev. Rev. Stat. § 686A.310(2).

First, Holper's argument that National Fire misrepresented the nature of its investigation under NRS 686A.310(1)(a) does not give rise to a genuine dispute of material fact. Holper alleges only that National Fire misrepresented the nature of the March 20, 2018, interview. (ECF Nos. 41, 55). Because Holper does not argue that National Fire misrepresented a pertinent fact or policy provision related to the coverage, as is required to establish a violation of the statute, Holper has not shown a genuine dispute of material fact for this violation.

Second, Holper's argument that National Fire should have provided its reservation of rights prior to the March 20, 2018, interview is insufficient to establish a violation of NRS 686A.310(1)(c). The parties do not dispute that National Fire received notice of the wrongful death action on or about March 6, 2018, and that National Fire tendered its defense and indemnity thereafter. (ECF Nos. 44, 55). After learning of the claim, National Fire then began conducting its investigation, and it provided its reservation of rights to Holper approximately forty-five days after it first received notice of the claim. (ECF No. 55). In light of these undisputed facts, Holper has failed to establish a genuine dispute of material fact as to the reasonableness of National Fire's investigation and processing of his claim.

Third, Holper's allegation under NRS 686A.310(1)(d) is unsupported by the record. Neither Holper's counterclaim (ECF No. 41) nor response to the instant motion (ECF No. 55) contains any facts to support finding that National Fire failed to affirm or deny coverage within a reasonable time. Further, National Fire is yet to affirm or deny coverage because it filed this action to determine its obligations under the policy. Holper has thus failed to establish a genuine dispute of material fact for this violation.

Fourth, NRS 686A.310(1)(f) is plainly inapplicable to the instant case. Holper's argument under this section thus fails to give rise to a genuine dispute of material fact.

Based on the foregoing, the court will therefore grant National Fire's motion for summary judgment on this counterclaim.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that National Fire's first motion to dismiss Holper's counterclaims (ECF No. 28) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that National Fire's first motion for summary judgment on Holper's counterclaims (ECF No. 29) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that National Fire's second motion to dismiss Holper's counterclaims (ECF No. 42) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that National Fire's second motion for summary judgment on Holper's counterclaims (ECF No. 43) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that National Fire's motion for summary judgment (ECF No. 44) be, and the same hereby is, GRANTED. The court will grant National Fire's requested declaratory relief in the form of the following: (1) Holper is in breach of exclusion four of the policy due to his willful violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (2) based upon the policy's fourth exclusion and the facts admitted in Holper's plea agreement in the related criminal action, no coverage exists for Holper regarding the incidents that are the subject of the estate's third amended complaint; (3) National Fire has no duty to defend Holper against the estate's claims

arising from the incidents that are described in the estate's third amended complaint; and (4) National Fire has no duty to indemnify Holper against the estate for any loss or damages arising from the incidents that are the subject of the estate's third amended complaint.

DATED October 8, 2019.

                                                          _____
                                                          UNITED STATES DISTRICT JUDGE